UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                               :
MOVADO GROUP, INC.,                    :
                         Plaintiff,    :
                                      :           12 Civ. 0855 (JPO)
                -v-                       :
                                      :           MEMORANDUM AND
CASEIKO TRADING COMPANY, INC. et al,  :           ORDER
                      Defendants.  :
                                      :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Movado Group, Inc. ("Movado") brings this action against Defendants Caseiko Trading Company ("Caseiko") and Amir Ben-Nissan ("Nissan") to recover on a contract for the sale of watches. Plaintiff asserts its claims under New York contract law and the New York Uniform Commercial Code. N.Y. U.C.C. §§ 2-701-2-705. Movado has moved for summary judgment on all claims, seeking (1) summary judgment against Caseiko and Ben-Nissan in the amount of $281,341.52 and (2) a severing of Movado's claim for attorney's fees. For the reasons that follow, Movado's motion is granted, and the claim for attorney's fees and costs is severed for a separate determination.

**I.    Background**

      **A.  Factual Background[1]**

      This is a case centering on an agreement for the sale of watches and an unpaid debt. (Movado's Local Civil Rule 56.1 Statement, Dkt. No. 44 ("Movado 56.1"), at ¶¶ 1-3.) In 2002 and 2009, Caseiko contracted with Movado to purchase ESQ Swiss and Movado brand watches.

---

[1] The following facts are drawn from the parties' Local Rule 56.1 statements and other submissions in connection with this motion, and are undisputed unless otherwise noted.

1

(Plaintiff's Memorandum in Support, Dkt. No. 43 ("Plaintiff's Mem."), at 2.)  In 2002 and 2009, to effectuate this sale, Ben-Nissan—CEO and President of Caseiko—submitted a credit application and an agreement to Movado.  (*See id.*; Mihalio Declaration in Support, Dkt. No. 42 ("Mihalio Decl."), at Exs. B, C.)

Ben-Nissan signed each credit application, and both contain a so-called "personal guarantee" clause, stating: "In consideration of the extension of credit to the Debtor each of the undersigned personally guarantees all debts incurred by the Debtor to the Company and agree that this shall be an absolute, unconditional and continuing guarantee." (Mihalio Decl. at Exs. B, C.)

Citing this language, Movado claims that Ben-Nissan is liable for Caseiko's unpaid debt, describing the clause as an "absolute" and "unconditional" guarantee. (Movado 56.1 at ¶ 10.) Defendants disagree, claiming that (1) Ben-Nissan entered into a new agreement with Movado that discharged his obligation, and alternatively, (2) any claims based on the 2002 guarantee are time-barred. (Defendants' Rule 56.1 Statement, Dkt. No. 49 ("Def.'s 56.1"), at ¶ 5.)

Pursuant to these credit agreements, Caseiko undisputedly purchased the ESQ Swiss and Movado brand watches from Movado. Caseiko also accepted the watches.  However, to date, neither Caseiko, nor Ben-Nissan, has paid the full purchase price of the watches. (Movado 56.1 at ¶ 3; Def.'s 56.1 at ¶ 1.)  The fact of indebtedness is not disputed (Def.'s 56.1 at ¶ 1), and Ben-Nissan admitted, in writing, to owing Movado $363,526.88 on October 28, 2010 (*see* Mihalio Decl. at Ex. I.)

Over the course of several years, Movado mailed monthly invoices to Caseiko, detailing the various charges on the account. (*See id.* at Exs. D1-D4.)  Defendants never objected to the monthly statements "itemizing and summarizing Caseiko's indebtedness" (Movado 56.1 at ¶ 8),

"including the last account statement mailed to Caseiko dated December 31, 2011," which stated a total indebtedness of $290,381.32. (*Id.*; Mihalio Decl. at Ex. L.) Defendants did object, however, to the interest shown on the stipulation dated October 29, 2010, with Ben-Nissan crossing out the $10,235.49 listed as interest in that stipulation. (Mihalio Decl. at Ex. J; *see also* Def.'s 56.1 at ¶ 3.)

This stipulation reflected an October 25, 2010 payment agreement between the parties, whereby Defendants agreed to pay the balance on their account in monthly installments from November 25, 2010 to May 25, 2012. (Mihalio Decl. at Ex. J.) In a letter dated November 9, 2010, Charles Post, the Senior Manager of Customer Financial services at Movado, clarified Movado's position that the interest would be waived only "upon payment in full of the Stipulation of Payment Agreement." (*Id.*)

Movado claims that Ben-Nissan currently owes $281,341.52 on the Caseiko account (Movado 56.1 at ¶ 12), whereas Defendants contend that Ben-Nissan is "not liable to Movado Group in any amount" (Def.'s 56.1 at ¶ 6), further arguing that Caseiko owes only approximately $250,000, rather than the larger sum cited by Plaintiff (*id.* at ¶ 4.)

**B. Procedural History**

Movado filed its first Complaint in this action in February 2012. (*See* Complaint, Dkt. No. 1.) On April 3, 2012, Defendants filed a motion to dismiss for lack of jurisdiction and venue. (Motion to Dismiss, Dkt. No. 16.) On April 10, 2012 Plaintiff filed an amended complaint, and two days later, Plaintiff filed its opposition to Defendants' motion. (*See* Amended Complaint, Dkt. No. 19 ("Compl."); Declaration of John Mihalio in Opposition, Dkt. No. 20.) Defendants filed a second motion to dismiss on April 27, 2012 (*See* Motion to Dismiss, Dkt. No. 23), which this Court construed as a reply to their original, April 3 motion. (*See* Order, Dkt. No.

32.) On May 17, 2012, this Court denied Defendants' motion to dismiss for lack of jurisdiction (*see* Order, Dkt. No. 34), and the case proceeded with discovery. Fact discovery concluded on September 30, 2012, and expert discovery was due by November 15, 2012. (*See* Scheduling Order, Dkt. No. 36.)

On July 13, 2012, Plaintiff filed the instant motion for summary judgment. (Motion for Summary Judgment, Dkt. No. 41.) Defendants filed their opposition on August 13, 2012 (Affirmation of J. Bachrach in Opposition, Dkt. No. 46 ("Def.'s Opp."), and Plaintiff replied on August 27, 2012 (Reply Memorandum of Law, Dkt. No. 52 ("Plaintiff's Rep.").)

## II. Discussion

### A. Legal Standard

A court may grant a motion for summary judgment only where all of the parties' submissions, read together, reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). The burden of "establishing the absence of any genuine issue of material fact" falls to the moving party, *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010), whereas the non-movant benefits from the court's construction of all facts, and the resolution of all ambiguities, in its favor. *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) ("In determining whether summary judgment is appropriate, this Court will 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" (citation omitted)).

A court must read the facts "in the light most favorable" to the non-movant, *id.*, but also must "dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S.

4

317, 323-24 (1986). And while a court must deny a motion for summary judgment whenever reasonable jurors could disagree as to the result, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Caseiko's Liability

Plaintiff moves for summary judgment against Caseiko on two, alternative theories: (1) an Action for Price under § 2-709 of New York's Uniform Commercial Code ("N.Y. U.C.C.")[2] and (2) a cause of action for account stated. Each is addressed in turn.

#### 1. Price of Goods Sold and Accepted

Section 2-709 of the N.Y. U.C.C. provides that a seller of goods may recover against a buyer, "in an action for price," the price of the goods accepted "together with any incidental damages." N.Y. U.C.C. § 2-709(1)(a). Under the N.Y. U.C.C., acceptance of goods occurs where the buyer: (1) has a reasonable opportunity to inspect goods and "signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity"; (2) does not effectively reject the goods; *or* (3) "does any act inconsistent with the seller's ownership." N.Y. U.C.C § 2-606(a)-(c). To recover in an action for price under N.Y. U.C.C. § 2-709(1)(a), plaintiffs must demonstrate that: "1) they had a contract; 2) the buyer failed to pay the purchase price; and 3) the buyer accepted the goods." *Weil v. Murray*, 161 F.

---

[2] The N.Y. U.C.C. governs the sale of goods between Movado and Caseiko, as the Terms and Conditions of sale stated that contracts between seller (Movado) and customer (Caseiko) were to be governed by the law of the territory where seller (Movado) is domiciled. Movado was incorporated in the state of New York in 1967 (Mihalio Decl. at Ex. A.), and its principal place of business is New Jersey. (Compl. at ¶ 1.) Under New York choice of law principles, the domicile of a corporation is the state of incorporation. *See In re Dissolution of Chris Kole Enterp.*, 725 N.Y.S.2d 838, 839-40 (Sup. Ct. 2001); 18 C.J.S. Corporations § 147; (*see also* Order Denying Motion to Dismiss, Dkt. No. 34.)

Supp. 2d 250, 254-55 (S.D.N.Y. 2001); *see also Hyosung Am., Inc. v. Sumagh Textile Co.*, 137 F.3d 75, 79 n.1 (2d Cir. 1998).

Here, there is no dispute that the parties contracted for the sale of watches from Movado to Caseiko. (Def.'s 56.1 at ¶ 1.)  Additionally, the parties agree that Caseiko accepted, but never paid for, the watches that are the subject of this action. (*See id.*; Movado 56.1 at ¶¶ 1-4.)  Instead, the dispute with respect to the action for price relates to the amount, rather than the fact, of liability. Defendants contend that the amount "currently owing is approximately $250,000," rather than the $281,341.52 cited by Movado. (*Compare* Def.'s 56.1 at ¶ 2, *with* Movado 56.1 at ¶ 5.)  However, Defendants' claim that the amount due is around $250,000 rather than $281,341.52 is nothing more than a "factually unsupported" defense. *Celotex*, 477 U.S. at 324. Whereas Movado includes invoices detailing the provenance of its sum (*see, e.g.*, Mihalio Decl. at Ex. M), Defendants merely assert, without any evidence, that the amount owed is closer to $250,000. (Def.'s 56.1 at ¶ 4.)  With this naked assertion, Defendants, though the non-moving party, have not met even the most limited of burdens. *See, e.g.*, *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." (internal quotations omitted)).  Movado's invoices, which were mailed to Defendants, detail thousands of dollars worth of merchandise—bought on credit, but for which Defendants never paid. (*See, e.g.*, *id.* at Exs. D1-D4.)  Having offered no evidence to controvert the detailed records provided by Movado that describe the amount owed, and admitting that they bought watches on credit, but never paid for them, Defendants cannot escape the realities of N.Y. U.C.C. § 2-709(1)(a).  In sum, Movado and Caseiko contracted for the sale of watches on credit, which constitute goods under the N.Y. U.C.C., Caseiko failed to pay its account balance of

$281,341.52, despite keeping the goods, and thus, Movado may recover under the N.Y. U.C.C. in an action for price.

### 2. Account Stated

Alternatively, Movado asserts that it is entitled to the amount due on the Caseiko account because the invoices sent to Defendants constitute an "account stated." (*See* Plaintiff's Mem. at 6-7.) This Court agrees with Movado that even if this contract failed under the N.Y. U.C.C., Defendants would still owe the amount stated on the latest invoice from June 2012 (*see* Mihalio Decl. at Ex. M, 1), as the invoice reflected an "account stated."

An account stated reflects an "'agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due.'" *Citibank (South Dakota), N.A. v. Brown-Serulovic*, 97 A.D. 3d 522, 523, 948 N.Y.S.2d 331 (2d Dep't 2012) (quoting *Fleetwood Agency, Inc. v. Verde Elec. Corp.,* 85 A.D.3d 850, 851, 925 N.Y.S.2d 576 (2d Dep't 2011)). Even where a contract has not been formed, "'[a]n agreement may be implied where a defendant retains bills without objecting to them within a reasonable period of time, or makes partial payment on the account.'" *Id.* (quoting *Am. Express Centurion Bank v. Cutler,* 81 A.D.3d 761, 762, 916 N.Y.S.2d 622 (2d Dep't 2011)); *see also Nebraskaland, Inc. v. Best Selections*, Inc. 303 A.D.2d 662, 664, 757 N.Y.S.2d 94 (2d Dep't 2003) ("There is no evidence in the record that [the defendant] objected orally or in writing to the invoices and the statement sent to him by the plaintiff. The plaintiff established its entitlement to recover the principal sum of $50,131.11, through the invoices and statement submitted at trial. Because [the defendant] did not object within a reasonable period of time to the invoices or statement he received, his retention of them without objection gave rise to an enforceable account stated.").

Here, there is no evidence that Caseiko ever objected to the monthly statements Movado mailed to it, which detailed "Caseiko's indebtedness, including accruing interest." (Movado 56.1 at ¶ 8.)  In fact, in a letter dated October 28, 2010, Ben-Nissan admitted to the fact that Caseiko owed Movado $363,526.88, and requested "patience" as his company attempted to "solv[e] th[e] matter." (Mihalio Decl. at Ex. I.)  Defendants do contend that they objected to the interest in the amount of $10,235.49 listed on the October 2010 Stipulation of Payment agreement, noting that Ben-Nissan crossed out the interest on the summary of the balance due. (*Id.* at Ex. J; Def.'s 56.1 at ¶ 3.)  However, Movado made clear in its response to this action that "all past due and accrued interest" would nevertheless be "due and payable" if Defendants defaulted on the terms of the Stipulation of Payment Agreement. (Mihalio Decl. at Ex. J; *id.* at Ex. K.) Movado contends that the "cross-out" of the interest was nothing more than a request that interest be waived, rather than an objection to the inclusion of interest in the account balance—a fact bolstered by Movado's response to Ben-Nissan's action on the October stipulation, which seemed to clarify that payment in full of the balance was a condition of the interest waiver. (Plaintiff's Rep. at 4.)

The evidence supports Movado's position that Ben-Nissan's cross-out did not amount to an objection.  First, Defendants concede that the terms and conditions of the watches' sale required Caseiko to "pay interest on the balance due on overdue invoices," which they have not, to date, paid. (Movado 56.1 at ¶ 4; Def.'s 56.1 at ¶ 1.)  Moreover, Defendants never objected to any of the invoices from which the $281,341.52 total is drawn, including account statements from December 31, 2011 and June 12, 2012. (Mihalio Decl. at Exs. L, M.)  Additionally, Defendants partially paid down the account balance. (Movado 56.1 at ¶ 8; Def.'s 56.1 at ¶ 4; *see also* Mihalio Decl. at Exs. L, M (showing that as of December 2011, Defendants owed $290,381.32 on their account and as of June 2012, Defendants owed the lesser amount of

8

$281,341.52 on that same account).)  Defendants (1) admittedly owe at least $250,000 on the account; (2) did not object to the invoices sent by Movado; (3) paid money toward their account; and (4) offer no evidence to controvert the account statements detailing the source of the $281,341.52 owed.  Accordingly, Caseiko is alternatively liable to Movado under an account stated theory.

### 3. Ben-Nissan's Liability

Having established that Defendant Caseiko owes Movado $281,341.52 for the watches it purchased on credit, but for which it did not pay, this Court turns now to whether Ben-Nissan, Caseiko's President and CEO, is also liable for the debt in light of the "continuing guarantees" included in Caseiko's 2002 and 2009 credit applications. (Mihalio Decl. at Exs. B, C.)  A guarantee is an "agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to the contractual obligation." *Shire Realty Corp. v. Schorr*, 55 A.D.2d 356, 359, 390 N.Y.S.2d 622 (2d Dep't 1977).  In turn, a "continuing guarantee" reflects a "continuing offer to guarantee a series of debts." *Delaware Funds, Inc. v. Zuckerman-Honickman, Inc.*, 43 A.D.2d 889, 889, 351 N.Y.S.2d 769 (4th Dep't 1974).  Here, the personal guarantees present in both the 2002 and 2009 credit applications are identical and read as follows: "In consideration of the extension of credit to the Debtor each of the undersigned personally guarantees all debts incurred by the Debtor to the Company and agree that this shall be an absolute, unconditional and continuing guaranty." (Mihalio Decl. at Exs. B, C.)  Ben-Nissan's signature appears on both the 2002 and the 2009 credit applications, and his name is also printed on both applications as "Amir Ben-Nissan―President" and "Amir Ben-Nissan―CEO," respectively. (*Id.*)  In response to these documents, and Movado's motion, Defendants assert that: (1) the 2009 credit agreement is missing crucial components; (2) a new agreement between Movado and Ben-Nissan replaced

9

the 2002 and 2009 guarantees, eliminating Ben-Nissan's responsibility for Caseiko's debt; and (3) in any event, all claims based on the 2002 guarantee are time-barred by the N.Y. U.C.C.'s statute of limitations. (Def.'s 56.1 at ¶¶ 5,6; Declaration in Opposition, Dkt. No. 47 ("Ben-Nissan Decl.), at ¶¶ 4, 5-7.)  Each argument is addressed in turn.

First, Defendants assert that Movado, by providing only the last page of the 2009 credit application, failed to provide a "true and complete copy" of the guarantee at issue here. (*See* Defendant's Affirmation in Opposition, Dkt. No. 46 ("Def.'s Aff."), at ¶¶ 9-10.)  Moreover, Ben-Nissan claims that he has "no recollection" of signing the "alleged 2009 personal guarantee." (Ben-Nissan Decl. at ¶ 4.)  While it is true that Movado included in its summary judgment submission only the final page of the 2009 credit application, the document contains (1) a date stamp of "Sep. 24 2009"; (2) a paragraph making clear that the document is indeed a credit application;[3] (3) a personal guarantee identical to the 2002 guarantee; and (4) Ben-Nissan's printed name and signature. (Mihalio Decl. at Ex. C.)  Thus, the exhibited page of the 2009 credit application includes all the crucial details upon which Movado's claim―that Ben-Nissan guaranteed Caseiko's debt―depends.  Put another way, the exact contents of the first several pages of the credit application form—an example of which can be seen in pages one and two of the 2002 application—do not alter the legal effect of Ben-Nissan's guarantee, a copy of which Movado undisputedly provided. (*Id.* at Exs. B, C.)  Moreover, the fact that Ben-Nissan has no recollection of signing the document does not change its enforceability, as he has put forward no evidence other than his own lack of memory that the signature on page four of the 2009

---

[3]Paragraph (1) of this document states as follows: "In making this *application for credit*, the undersigned, hereinafter referred to as "Debtor," acknowledges receipt of and, in the event credit is granted, agrees to the Terms and Conditions of sale contained on each invoice. . . ." (Mihalio Decl. at Ex. C (emphasis added).)

declaration is inauthentic, or someone else's affirmation, rather than his own. (*See generally* Ben-Nissan Decl.)

Second, Ben-Nissan also asserts that that in 2010, he "re-negotiated the relationship between Movado and Caseiko" with an unnamed Movado representative. (*Id.* at ¶ 5 (internal quotations omitted).) According to Ben-Nissan, this representative told him that the new agreement "would completely replace [the] old agreement." (*Id.* at ¶ 6.) Assuming that Ben-Nissan is referring to the 2010 Stipulation of Payment Agreement, the correspondence detailing this agreement makes no mention of the relationship among the parties as Ben-Nissan suggests in his declaration, but rather, reflects a payment schedule, evidently designed to facilitate Defendants' repayment of their existing debt. (*See* Mihalio Decl. at Exs. I-K.) Nowhere in their correspondence to Ben-Nissan do Charles Post or Linda Ribeiro—of Movado Customer Financial Services—state that the relationship among Movado, Ben-Nissan, and Caseiko is altered by the new payment schedule. (*See* Mihalio Decl. at Ex. J.) Additionally, Ben-Nissan offers no substantiation for his claim that an unnamed Movado representative stated that the new agreement would "completely replace" the original contract between parties. Moreover, the fact that Ben-Nissan did not guarantee the 2010 Stipulation of Payment Agreement is irrelevant, as again, this agreement dealt with a payment schedule rather than the obligations of each party under the original contract. *Cf. Oak Beverages, Inc. v. Ehrlich*, 224 A.D.2d 403, 403, 637 N.Y.S.2d 758 (2d Dep't 1996) ("The court properly granted the plaintiff's motion for summary judgment and properly denied the appellant's cross motion for summary judgment. The appellant signed a continuing guaranty that 'is in the nature of a continuing offer to guarantee a series of debts' and never revoked the guaranty to the creditor. Thus, upon the default of the

11

debtor, the appellant, as the guarantor, is liable for payment on the debt." (internal citations omitted)).

Finally, Defendants argue that even if the guarantees are valid, all claims based on the 2002 guarantee are barred by the N.Y. U.C.C.'s statute of limitations period of four years. (*See* Ben-Nissan Decl. at ¶ 3; Def.'s Opp. at ¶¶ 52-58; N.Y. U.C.C. § 2-725.)  First and foremost, the statute of limitations period for breach of a guarantee is governed by contract law, rather than the N.Y. U.C.C. *See Am. Trading Co. v. Fish*, 42 N.Y.2d 20, 26, 364 N.E.2d 1309 (N.Y. Ct. App. 1977) ("In our view, the appropriate Statute of Limitations with respect to defendant's guarantee should be the six-year period applicable to contracts generally under CPLR 213 (subd 2)."). In other words, New York courts view guarantees—even those within contracts for the sale of goods—as separate obligations from those present in the underlying agreement, and thus, have held such guarantees to be subject to a six-year limitations period. *See, e.g.*, *id.* at 26-27 ("This determination is not based on any conclusion that the agreement here did not involve a contract for the sale of goods. Rather, it is based on the recognition that defendant's guarantee was an undertaking separate from the sales arrangement itself. In so holding, we reject the notion that a guarantee of a contract of sale must in all instances be subject to the same Statute of Limitations as the underlying obligation.  Of course, the Uniform Commercial Code rather than the CPLR controls with regard to contracts for the sale of goods. However, article 2 of the Uniform Commercial Code does not expressly or by implication provide that it is applicable to guarantees of such contracts, and there is no statutory direction requiring that its provisions supersede the CPLR simply because the undertaking in question is a guarantee of a contract for the sale of goods rather than some other type of contract." (internal citations omitted)).

Having established that guarantees, such as those at issue here, are subject to a six-year statute of limitations, the question remains whether Movado's cause of action accrued within the limitations period. The evidence shows beyond genuine dispute that the action was brought within the applicable six-year limitations period. Movado filed its first Complaint in this action on February 3, 2012. The unpaid invoices upon which Movado is basing its claim are dated between January 3, 2008 and July 2011. (*See* Mihalio Decl. at Exs. D1-D4.) The terms of the January 3, 2008 invoice—the earliest invoice at issue here—state "2% 10, Net 90," which means that payment was due on that particular invoice 90 days from January 3, 2008, or on April 2, 2008. (Plaintiff's Rep. at 5.) Thus, so long as Movado commenced its action by April 2, 2014, or six years from the date of the breach's accrual, its action against Ben-Nissan would be timely in the most fundamental sense. Additionally, in the case of a continuing guarantee, like those at issue here, the limitations period actually runs from the date of each breach's accrual, not the date of the instrument. *See Bulova Watch Co., Inc. v. Celotex Corp.*, 46 N.Y.2d 606, 611-12, 389 N.E.2d 130 (N.Y. Ct. App. 1979) (holding that the six-year statute of limitations period began anew with each new leak of a roof where contractor had made 20-year guarantee to repair roof). Put another way, so long as Movado commenced its action against Ben-Nissan within six years of the most *recent* breach, its action would still be timely, regardless of the 2002 date of the first guarantee and the 2008 date of the first invoice. In sum, the timeliness of Movado's action against Ben-Nissan is beyond dispute. *See Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 80, 430 N.Y.S.2d 179 (4th Dep't 1980) ("[W]here a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to filing of the suit.").

### 4. Attorney's Fees

Movado also contends that it is entitled to "reimbursement of its reasonable attorneys' fees and costs incurred in collection of amounts due." (Plaintiff's Mem. at 8.) Movado asserts that since the collection costs incurred through the date of this Court's decision are not yet known, its claim for attorney's fees and costs should be severed from the instant motion. (*Id.*) This Court gives Movado leave to file a separate application addressing attorney's fees and other costs associated with this action.

## III. Conclusion

For the foregoing reasons, Movado's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of Movado and against Defendants in the amount of $281,341.52.

Movado may submit any motion for attorney's fees and costs within 30 days of this decision, and Defendants shall have two weeks thereafter to respond to any such motion.

The Clerk of Court is directed to close the motion at docket entry number 41.

SO ORDERED.

Dated: New York, New York
December 11, 2012

_____
J. PAUL OETKEN
United States District Judge